## MESKER *et al. v.* THUENER *et al.*

(*Circuit Court, E. D. Missouri, E. D.* October 30, 1889.)

1. PATENTS FOR INVENTIONS—PATENTABILITY—UTILITY—PRESUMPTION.
   In the absence of satisfactory evidence to the contrary, the subject-matter of every patent is presumed to be useful and patentable.
2. SAME—INFRINGEMENT—ORNAMENTAL CEILINGS.
   Letters patent No. 361,438, granted April 19, 1887, to Mesker & Bro., for an improvement in sheet-metal ceilings, walls, or panels, *held* valid, and infringed by ceilings made in accordance with letters patent No. 376,926, granted January 24, 1888, for an improvement in metallic ceilings.

In Equity.

This was a suit for the infringement of letters patent of the United States No. 361,438, granted April 19, 1887, to the firm of Mesker & Bro., for an improvement in sheet-metal ceilings, walls, or panels, by ceiling manufactured and sold by defendants, made in accordance with the letters patent No. 376,926, granted to Charles Thuéner, January 24, 1888. The claim of the patent sued on is as follows:

"The combination of the sheets, A, A, A, and the cross-bars, B, are sheet, A, having the fold, $a^2$, $a^3$, and receiving the edge of the adjoining sheet, A,

and being secured to the frame of the structure, and said bar, B, having the folds, $b$, $b^1$, substantially as described."

The "fold, $a^2$, $a^3$," referred to in the claim of the patent, is a re-entering fold, capable of receiving and supporting the edge of the adjoining sheet, and having the return bend or part, $a^3$, carried far enough out to project beyond the edge of the supporting ledge beneath, and forming a nailing flange, which is hidden when the ceiling is in place. Each sheet has but the one nailing flange. The folds, $b$, $b^1$, of the bars, are re-entering folds, capable of each receiving the end of a sheet, so that the ends of two sheets may be joined together by means of it. The cross-bars have no nailing flanges, but are supported upon the ends of the sheets. The whole ceiling is supported upon the concerted nailing flanges formed on one side edge of each sheet in the manner above stated. The fold, $a^2$, $a^3$, shown in the drawings of the patent sued on, forms a ledge having an inclined bearing. The fold used by the defendants formed a flat bearing. In other respects the folds were the same. The bars shown in the complainant's patent have two sides, sloping inward until they meet. The bars in the infringing ceiling differed from them only in the fact that they presented three sides to view, the top being flat. The defenses were lack of novelty and patentability and non-infringement. A very large number of patents were offered in evidence. Those upon which most stress was placed by the defendants' counsel are the following: Patent granted J. D. Ottiwell, No. 343,775; patent granted F. Roys, No. 95,732; and patent granted P. A. Thomas, No. 358,175.

*Benjamin F. Rex*, for complainants.

*George H. Knight*, for defendants.

THAYER, J., (*orally.*) This case was argued for a day and a half. The questions and patents discussed are so numerous that it is impossible, in the time at my disposal, to go over all of the points in detail. Hence in this case I content myself with a statement of the conclusions I have formed. In view of the state of the art, and the numerous kinds of metallic ceiling heretofore patented, it is no doubt questionable whether the metallic ceiling patented by Mesker possesses patentable novelty. But inasmuch as the patent creates the presumption that the combination claimed is patentable, and is a useful combination, and inasmuch as the evidence does not satisfactorily overcome that presumption, and furthermore, as it is evident from an examination of the ceiling made by the defendants that it was copied from the ceiling manufactured by complainants, with merely a colorable difference in one particular, (that is, in the form of the fold,) I have determined to order a decree in favor of complainant. In view of the amount of testimony that has been taken, it appears to me that it is unnecessary to order a reference in this case for the purpose of ascertaining the damages resulting from the infringement. From the testimony already taken, it is probable that counsel can easily agree as to the amount of damages to be assessed. Hence a reference to a master will not be ordered, unless complainants' counsel insists upon a reference. If he does so insist, a reference will,

of course, be ordered; but the court will reserve the right to put the costs of such reference where they shall belong, if, at the conclusion of the reference, as now, it appears that the reference was unnecessary.